IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| R. ALEXANDER ACOSTA | : CIVIL ACTION |
|---|---|
| v. | : NO. 17-4302 |
| FAIRMOUNT FOUNDRY, INC. | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                                           **January 14, 2019**

Enforcing workplace safety regulations may require employees reporting their employer's safety risks. Who – other than those exposed to the alleged risks - would know better? To meet the goal of candid reporting to federal regulators, federal law affords confidentiality as to the identity of those reporting employees to mitigate an employer's retaliation. We balance this federal policy with the need for the employer to prepare to present or cross-examine witnesses at trial in a suit filed by the Secretary of Labor. Today we also address the impact of the federal regulators telling the employer who it wished to interview during the pre-suit investigation. So, the employer knows the names of the three identified employees and knows what an employee said. The employer's unanswered question is who said what and what did the regulators recommend regarding enforcement. The Secretary of Labor, invoking informer and deliberative process privileges, redacted the names of the informer employees, other unrelated information, and the recommendations of the investigating regulator. After discovery, the employer now seeks the unredacted documents. In an accompanying Order, we direct the Secretary to today produce unredacted documents disclosing information unrelated to informer identity, produce documents disclosing the interviewed informer employees if those witnesses are listed in pre-trial memoranda, but preclude disclosure of the investigating regulator's deliberative processes.

## I. Allegations material to the Secretary's asserted privileges.

Zachary Zettlemoyer worked for Fairmount Foundry, Inc. as a molder helper in 2015.[1] In July 2015, Mr. Zettlemoyer began complaining to Fairmount Foundry about a roof leaking water onto an electrical box in his work area because he feared the leak posed a safety hazard.[2] On September 30, 2015, Mr. Zettlemoyer made an anonymous complaint to the Occupational Health and Safety Administration (OHSA) about the leak.[3] OSHA conducted an unannounced inspection of the worksite on October 2, 2015.[4] Three days after OSHA's inspection, Douglas Vaughn, Fairmount Foundry's President of Operations, confronted Mr. Zettlemoyer regarding the OSHA safety complaint.[5] Fairmount Foundry terminated Mr. Zettlemoyer on October 8, 2015.[6] Mr. Zettlemoyer filed a whistleblower complaint with OSHA on October 28, 2015, claiming Fairmount Foundry terminated him in retaliation for reporting the leaky.[7]

OSHA regional investigator Edward Rhoades then began investigating Mr. Zettlemoyer's complaint. Investigator Rhoades told Fairmount Foundry he wanted to interview identified Fairmount Foundry employees, two of whom no longer worked for Fairmount Foundry.[8] Investigator Rhoades interviewed the identified employees in mid-December 2016. Two of the identified employees requested confidentiality.

Investigator Rhoades sent a memorandum to an OSHA assistant regional administrator documenting his findings and recommending OSHA sue Fairmount Foundry.[9] The Secretary of Labor Alexander Acosta field suit seeking to enjoin Fairmount Foundry from alleged violations of the Occupational Health and Safety Act and recover damages for Mr. Zettlemoyer for reporting allegedly unsafe working conditions at Fairmount Foundry.

During discovery, Secretary Acosta inadvertently disclosed redacted material – including the names of the three employees - to Fairmount Foundry, which then destroyed the material.[10]

2

The Secretary's initial disclosure included the names and statements of three interviewed employees.[11] The Secretary then produced redacted copies of these records, including some information unrelated to the employees' identity.

Fairmount Foundry moved for expedited *in camera* review of redacted and withheld documents.[12] We granted in part Fairmount Foundry's motion, ordering the Secretary to electronically produce all redacted documents not previously produced to Fairmount Foundry and to deliver unredacted documents for *in camera* review as well as a memorandum describing the specific basis of any privilege precluding the disclosure of redacted information.[13] The Secretary filed a memorandum explaining the basis of its asserted privileges.[14] Fairmount Foundry filed its opposition.[15]

## II. Analysis

The Secretary asserts the informer's privilege over disclosing the names of the interviewed employees known by Fairmount Foundry from the investigation. But Fairmount Foundry does not know who said what. The Secretary also invokes the deliberative process privilege over Investigator Rhoades' recommendations. After our *in camera* expedited review of the unredacted documents, we grant Fairmount Foundry's motion to compel information not related to the employees' identities now, the already known names of the employees interviewed following pre-trial memoranda, but not Investigator Rhoads' impressions.

### A. The informer's privilege does not protect the identity of the known informants for trial.

The informer's privilege (also referred to as the "informant's" privilege) is "in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."[16] "The purpose of the privilege is the furtherance and protection of the public interest in effective law

3

enforcement."[17] But "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable."[18] "There is no use in a court throwing a theoretical cloak over an informant when in practice the informant remains exposed to whatever retaliation might have been averted through anonymity."[19]

Once the party asserting the privilege properly invokes it by making "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual consideration by the officer," the party seeking disclosure "bears the burden of establishing that his or her need for disclosure is greater than the purpose behind the privilege."[20] "While often invoked, the informer's privilege is not absolute."[21] "[T]he privilege must give way where the disclosure of an informer's identity is . . . essential to a fair determination of a cause."[22] In determining whether the privilege should give way, we must give "due regard . . . to the defendant['s] right to prepare [its] defense properly."[23]

After conducting an *in camera* review of the discovery materials, we conclude the identities of the three employee informants are not privileged as we approach trial because Fairmount Foundry's need for the contents of their interviews outweighs the informants' risk of retaliation. We cannot overlook Secretary Acosta's inadvertent disclosure of the informants' identities to Fairmount Foundry, the primary party which "would have cause to resent the communication."[24] Even with redactions, the Secretary did not redact identities from the indices to transcripts. Because of the disclosure, we need not "throw a theoretical cloak"[25] over the identities because their anonymity is no longer present. Applying *Perez's* balancing framework, Fairmount Foundry's need for the interviews' information, though not great at this pre-summary judgment stage of the litigation where we do not consider the bias or credibility questions, outweighs the need to protect the interviewees' identities from disclosure. Even if we redacted the interviews,

4

Fairmount Foundry could well infer the interviewees told Investigator Rhoades inculpatory information in their interviews because Secretary Acosta ended up suing Fairmount Foundry. Unlike other employee informer cases, two of the interviewees did not request anonymity. One did. And at least two of the three interviewees no longer work for Fairmount Foundry, further reducing the possibility they face retaliation. These factors, on balance, weigh in favor of disclosure of their identities as we prepare for trial.

With two caveats. First, the Secretary redacted more than just the informer's identity.[26] We appreciate some incidental facts may persuasively point to an informer warranting redaction, but the Secretary redacted neutral information without explaining why. We edited these extra redactions and direct the Secretary to immediately produce the documents sent to them with today's Order consistent with our edits. Second, there is no need for disclosing the informer employees' names at this stage. Fairmount Foundry has not met its burden of establishing its need for disclosure is greater than the purpose behind the privilege at this pretrial stage. Fairmount Foundry could not claim prejudice because it knew the three interviewed employees and could have deposed them. Fairmount Foundry contends it must know the informants' identities because the informants' information will be essential to the Secretary's case at trial. As the parties have yet to file summary judgment motions, we cannot discern how the informants' identities are important to Fairmount Foundry right now. Were the case approaching trial or had the parties disclosed witness lists including an informer,[27] Fairmount Foundry would have a stronger claim to immediate access. But right now, who made which assertion is irrelevant for summary judgment purposes, as we cannot make credibility determinations in deciding summary judgment motions. Similarly, the deadline for the parties to identify trial witnesses is February 15, 2019—more than one month from now. Fairmount Foundry asserts non-disclosure will provide the Secretary with

tools to conduct a "trial by ambush," but the Secretary has yet to decide which witnesses he will call at trial. The parties' pre-trial memoranda will alleviate this concern. Should the Secretary or Fairmount Foundry list one or more of the employees as witnesses in a pre-trial memo, the Secretary must immediately produce the unredacted interview notes for a named witness.

### B. The deliberative process privilege warrants redactions to Investigator Rhoades's memorandum.

"The deliberative process privilege permits the government to withhold documents containing confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice."[28] The deliberative process privilege exists to "prevent injury to the quality of agency decisions which could result from premature or indiscriminate disclosure" of agency deliberations.[29] The privilege protects materials reflecting the "give and take of the consultative process" as well as "personal opinions of the writer."[30] "The deliberative process privilege does not protect factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable."[31]

The deliberative process privilege is not absolute and should be narrowly construed.[32] "The initial burden of showing privilege applies is on the government."[33] Then, "[t]he party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest."[34] In determining whether the party seeking discovery has met its burden, we must consider "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."[35]

Fairmount Foundry offers two arguments to review the investigator's impressions in his memorandum. Fairmount Foundry argues the privilege does not reach the memorandum because

6

it does not reflect any the investigator's "decision making process." This is wrong. The redacted portions of the memorandum reflect the investigator's legal opinions and conclusions about whether the OSHA should sue on behalf of Mr. Zettlemoyer. Some of these opinions include fact application, but none of the facts the investigator applied are unavailable to Fairmount Foundry because of the deliberative process privilege. Fairmount Foundry argues the privilege does not reach the memorandum because agency investigators' reports are beyond the privilege's scope. This is also wrong. The privilege reaches intra-agency documents reflecting the agency's decision to sue.[36]

The deliberative process privilege protects the redacted portions of Investigator Rhoades's investigative memorandum which reflect his conclusions or opinions. We maintain redactions on those portions of the memorandum.

### III. Conclusion

Fairmount Foundry is entitled to the some of the redacted information now and the unredacted documents disclosing the identity of the informer employees as we approach trial. But not yet as to the redacted identification of informer employees. It has not shown a right to Inspector Rhoads' impressions and recommendations necessary to overcome the important objectives of the deliberative process privilege.

---

[1] Complaint at ¶ VI (ECF Doc. No. 1).

[2] *Id.* at ¶ VII.

[3] *Id.* at ¶ VIII.

[4] *Id.* at ¶ IX.

[5] *Id.* at ¶ at X.

7

[6] *Id.* at ¶ XI.

[7] *Id.* at ¶ XII.

[8] ECF Doc. No. 36-6 (Ex. F).

[9] ECF Doc. No. 36-9 (Ex. I).

[10] ECF Doc. No. 31 at ¶¶ 4-9.

[11] *Id.* at ¶ 4.

[12] ECF Doc. No. 31.

[13] ECF Doc. No. 32.

[14] ECF Doc. No. 34.

[15] ECF Doc. No. 36.

[16] *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *see also Mitchell v. Roma*, 265 F.2d 633, 635 (3d Cir. 1959).

[17] *Donovan v. Fasgo, Inc.*, No. 81-0129, 1981 WL 2402, at *2 (E.D. Pa. Oct. 6, 1981).

[18] *Roviaro*, 353 U.S. at 60.

[19] *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11 CIV. 3543, 2014 WL 2116147, at *3 (S.D.N.Y. May 14, 2014).

[20] *Perez v. Am. Future Sys., Inc.*, No. 12-6171, 2013 WL 5728674, at *3–4 (E.D. Pa. Oct. 21, 2013) (internal quotation omitted).

[21] *Id.* at *3.

[22] *Mitchell*, 265 F.2d at 635.

[23] *Fermaintt v. McWane, Inc.*, No. CV 06-5983 (JAP), 2008 WL 11383665, at *9 (D.N.J. Dec. 17, 2008).

[24] *Roviaro*, 353 U.S. at 60.

[25] *Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11 CIV. 3543, 2014 WL 2116147, at *3 (S.D.N.Y. May 14, 2014).

[26] The Secretary curiously did not redact names from the index to transcribed interviews.

[27] *See Brock v. DialAmerica Mktg., Inc.*, No. 81-4020, 1986 WL 28913, at *5 (D.N.J. Oct. 15, 1986).

[28] *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (internal quotation omitted).

[29] *Del. Riverkeeper Network v. Del. River Basin Comm'n*, 300 F.R.D. 207, 210 (D.N.J. 2014).

[30] *Id.*

[31] *Redland Soccer*, 55 F.3d at 854.

[32] *Id.* at 854, 856.

[33] *Id.* at 854.

[34] *Id.*

[35] *Id.* (alterations in original).

[36] *See, e.g., United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *United States v. Menominee Tribal Enters.*, No. 07-316, 2009 WL 637188, at *1 (E.D. Wis. Mar. 10, 2009).