## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **R. ALEXANDER ACOSTA** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 17-4302** |
| | : |
| **FAIRMOUNT FOUNDRY, INC.** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                           **June 6, 2019**

The Secretary of the Department of Labor sued Zachary Zettlemoyer's former employer, Fairmount Foundry, Inc., alleging it fired Mr. Zettlemoyer six days after he complained to the Occupational Safety and Health Administration regarding a roof leak dripping water into an electrical box in his work area. He previously complained about this roof leak to his supervisors. After evaluating all the evidence, the jury found in favor of the Secretary, awarding Mr. Zettlemoyer compensatory damages, back pay, and punitive damages.

The Secretary moves for a back pay award in excess of the jury's advisory verdict; interest on the back pay award; a tax gross up on the back pay award; reinstatement of Mr. Zettlemoyer or, alternatively, an award of front pay; and other equitable relief. Fairmount Foundry seeks post-trial relief asking us to deny all injunctive or equitable relief to Mr. Zettlemoyer, vacate the jury's award of punitive damages and its finding of liability, and, alternatively, order a new trial arguing we erred by failing to instruct the jury on the meaning of at-will employment.

Finding ample evidence to support the jury's finding of liability and to support a punitive damages award, and finding no error in our jury instructions, we deny Fairmount Foundry's motion in its entirety. We grant in part and deny in part Secretary Acosta's motion by awarding some measure of equitable relief including reinstatement and back pay in accord with accompanying Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52(a)(1).

## I. Background

The Secretary of the Department of Labor, R. Alexander Acosta, sued Fairmount Foundry alleging it violated section 11(c) of the Occupational Safety and Health Act of 1970 (the "Act")[1] when it terminated Zachary Zettlemoyer in retaliation for complaining to the Occupational Safety and Health Administration ("OSHA") of a roof leak over his work area, a safety issue.

Section 11(c) prohibits retaliation against employees who file complaints with OSHA, including complaints of unsafe conditions or otherwise exercising rights afforded by the Act. Section 11(c) provides "[n]o person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter."[2]

Following a four day trial, the jury entered a verdict in favor of the Secretary and awarded Mr. Zettlemoyer compensatory damages of $5,000; back pay of $25,000 in an advisory verdict; and punitive damages of $10,000.[3] Both the Secretary and Fairmount Foundry seek post trial relief.

### A. Evidence adduced at trial.

#### *Mr. Zettlemoyer's work history at Fairmount Foundry.*

Mr. Zettlemoyer began working with Fairmount Foundry on December 7, 2006 until his lay-off one month later on January 5, 2007.[4] Mr. Zettlemoyer returned to work at Fairmount Foundry on March 26, 2007 but quit the next day.[5] Fairmount Foundry rehired Mr. Zettlemoyer on August 9, 2007 as a probationary employee.[6]

2

Under Fairmount Foundry's policy, new hires are "probationary employees" for a period of sixty working days when they must become members of the union.[7] Probationary employees are not members of the union until after the sixty-day probationary period. During the probationary period, employees are subject to Fairmount Foundry's "House Rules" governing disciplinary action, including an absenteeism and lateness policy assigning points for unexcused lateness and absences.[8] Probationary employees accumulating forty-five points due to unexcused absenteeism and lateness are discharged without union rights.[9] Points for absenteeism and lateness are removed after one year.[10]

After rehiring Mr. Zettlemoyer as a probationary employee on August 9, 2007, Fairmount Foundry terminated Mr. Zettlemoyer on March 6, 2008 for cause after he exceeded the allowable number of points.[11] The next day, March 7, 2008, Fairmount Foundry rehired Mr. Zettlemoyer to probationary status and he continued to work until a lay-off on March 22, 2009.[12]

Fairmount Foundry again rehired Mr. Zettlemoyer on August 10, 2009 and he worked continuously through October 18, 2012 when he quit his job there.[13] Fairmount Foundry rehired Mr. Zettlemoyer on March 12, 2013 on probationary status and he worked until April 9, 2015 when he again quit his job.[14]

Fairmount Foundry rehired Mr. Zettlemoyer on July 23, 2015 on probationary status. He worked until his termination on October 8, 2015.[15] During the July to October 2015 period, and other periods of employment, William Smith directly supervised Mr. Zettlemoyer.[16] Robert Block supervised Mr. Smith.[17]

3

### *Mr. Zettlemoyer complains to Fairmount Foundry and OSHA.*

In July and August 2015, Mr. Zettlemoyer complained to Mr. Smith, Mr. Block, and Fairmount Foundry President Douglas Vaughn about a roof leak in the "small loop" area of the foundry.[18] Mr. Block and Mr. Smith reported the leak to the foundry's maintenance department.

The leak continued. On September 30, 2015, Mr. Zettlemoyer called OSHA to complain about the roof leak.[19] An OSHA representative instructed Mr. Zettlemoyer to send an email to Kevin Kilp, Area Director of OSHA's Harrisburg office.[20] As directed, Mr. Zettlemoyer sent an email to Mr. Kilp on September 30, 2015 making "a formal complaint regards [sic] to a leaking roof in the work place Fairmount Foundry in Hamburg, Pa. My name is Zachary Zettlemoyer [I] work at [F]airmount [F]oundry and the roof is leaking right above my work area."[21]

Two days later, on October 2, 2015, an Industrial Hygienist and Compliance Safety Health Officer for OSHA, Ronald Smay, inspected the roof leak at Fairmount.[22] Mr. Smay told Mr. Vaughn OSHA received an anonymous complaint regarding a roof leak in the small loop area of the core room of the foundry.[23] Mr. Vaughn testified Mr. Smay came to the foundry on October 2, 2015 to inspect the complained-of leak onto an electrical box and admitted "we had a closing conference with [Mr. Smay] on the 2nd. And as he was walking to his car, out the door, … he said—he asked if we had a union at the plant. And I said yes. And he said, well, he'll have to come back and redo the closing conference. He was going to come back the following week."[24] As of October 2, 2015, Fairmount Foundry knew the OSHA Officer Smay would be back in the following week to redo the closing conference.

### *Fairmount Foundry's conduct following the OSHA inspection.*

Mr. Block testified Mr. Zettlemoyer told him about the roof leak and Mr. Block knew about the roof leak before the OSHA inspection on October 2, 2015.[25] After Mr. Smay inspected the

4

foundry on October 2, 2015, Mr. Block spoke with Mr. Vaughn about who might have made the OSHA complaint.[26] Mr. Block narrowed those who may have made the OSHA complaint to five employees, including Mr. Zettlemoyer.[27] Of the five employees Mr. Block believed could have complained to OSHA, only Mr. Zettlemoyer told him of a roof leaking water into an electrical box in his work area.[28]

Mr. Zettlemoyer testified he did not work on October 2, 2015, the day of Mr. Smay's inspection.[29] Mr. Zettlemoyer testified when he returned to work after OSHA Officer Smay October 2, 2015 promised to return to "redo the closing conference" in the next week, Mr. Smith's and Mr. Block's behavior toward him changed which he described as "they just had their eyes on me more and did not seem happy with me" and "when I would go to the bathroom, they would follow me" and "they stood by my area more often than what they would normally do."[30]

On October 6, 2015, Mr. Zettlemoyer testified Mr. Vaughn confronted him in the foundry, accusing him of calling OSHA.[31] Mr. Zettlemoyer testified Mr. Vaughn said "I heard you were the one that called OSHA"; in response, Mr. Zettlemoyer asked Mr. Vaughn "who told him that"; and then turned to walk away.[32] Mr. Zettlemoyer testified Mr. Vaughn followed him, "spun [him] around" by putting his hand on Mr. Zettlemoyer's shoulder, "got loud" and again accused Mr. Zettlemoyer of contacting OSHA.[33] Mr. Vaughn denies Mr. Zettlemoyer's version of their interchange in the foundry[34] and denied touching Mr. Zettlemoyer in confrontation on October 6.[35]

After his interchange with Mr. Vaughn, Mr. Zettlemoyer emailed OSHA representative Mr. Kilp at 2:35 PM on October 6, ten minutes after his work shift ended.[36] Mr. Zettlemoyer emailed: "You told me this was going to be private, why did my boss grab me and start yelling at me about calling you?"[37] Within an hour, Mr. Kilp responded to Mr. Zettlemoyer "OSHA does not discuss the identity of the complainant with the employer in any circumstance. We also make

5

it clear to the employer during the opening conference that they cannot discriminate against employees."[38] on October 6, 2016—two days before termination—Mr. Zettlemoyer expressed concern regarding the privacy of his complaint.[39] Mr. Kilp responded OSHA does not discuss the identity of the complainant with the employer in any circumstance and OSHA "also make[s] it clear to the employer *during the opening conference* that they cannot discriminate against employees."[40]

At 7:20 AM on October 8, 2015, Mr. Zettlemoyer emailed Mr. Kilp asking "Can you please contact me, [I] can't even go to the bathroom without having a foreman or boss in here now ... no one has yet to contact me about this situation it has me mentally distressed at this point and I dont [sic] know what yo [sic] do."[41] Later the same day, October 8, 2015—six days after the OSHA inspection and about a week after OSHA Officer Smay promised he would be back to "redo" the closing conference—Mr. Block fired Mr. Zettlemoyer.[42]

Mr. Block told Mr. Zettlemoyer he fired him because he accumulated too many points under Fairmount Foundry's "House Rules" for probationary employees.[43] Fairmount Foundry contemporaneously completed an "Employee Termination Form" describing the reason for Mr. Zettlemoyer's discharge as his accumulation of "over twenty points for absences" during a probationary period.[44] Under Fairmount Foundry's rules for probationary employees, accumulating twenty points results in a written warning and a loss of a personal day.[45] The "Employee Termination Form" indicated Fairmount Foundry would not rehire Mr. Zettlemoyer.[46]

Although Fairmount Foundry attributes its reason for termination on October 8 to an over twenty point accumulation for absences, its records show Mr. Zettlemoyer had accumulated twenty-two points two weeks earlier as of September 25, 2015.[47] On its "Record of Disciplinary

6

Action" form dated September 25, 2015, Fairmount Foundry issued a "written warning 1st offense" to Mr. Zettlemoyer for his accumulation of twenty-two points.[48]

### *Fairmount Foundry's previous treatment of Mr. Zettlemoyer's points.*

In March 2008, Mr. Zettlemoyer accumulated forty-five points for lateness and absences constituting grounds for dismissal. Mr. Zettlemoyer testified when he accrued forty-five points in March 2008, Fairmount Foundry did not discharge him. He testified Fairmount Foundry "fired and rehired" him, he did not "punch out" of work, and "went back to the floor, finished [his] shift, just came in the next day at the regular time and started as a new man" meaning he returned to the job as a probationary employee with no points and with the same pay rate.[49]

In October 2, 2008, Fairmount Foundry issued four "employee discipline action notice[s]" to Mr. Zettlemoyer for various points violations between thirty and forty-five points and imposed penalties ranging from a second written warning to discharge.[50] Mr. Zettlemoyer testified Mr. Smith did not explain why he issued four different notices and penalties on the same day and, notwithstanding the penalty of discharge, Mr. Zettlemoyer "just went back to zero points the next day" as a probationary employee.[51]

Mr. Vaughn testified he fired Mr. Zettlemoyer in 2008 for accumulated attendance points issues and then rehired him. Notwithstanding the foundry's past practice of firing and rehiring Mr. Zettlemoyer for attendance issues, Mr. Vaughn admitted he did not rehire Mr. Zettlemoyer in October 2015, marking him "ineligible" for rehire, and admitted October 2015 is the first time Fairmount Foundry marked Mr. Zettlemoyer ineligible for rehire.[52] Mr. Vaughn testified he previously fired and rehired Mr. Zettlemoyer because the foundry considered him valuable and productive and always remained willing to rehire him.[53]

7

## Mr. Zettlemoyer's hourly wage at Fairmount Foundry in 2015 and employment history after termination.

In 2015, Mr. Zettlemoyer worked at Fairmount Foundry from January 1 to April 9 and again from July 23 to October 8. At the time of his termination on October 8, Mr. Zettlemoyer earned between $14 and $15 an hour.[54] He earned a total of $17,702.17 while working at Fairmount Foundry in 2015.[55]

Mr. Zettlemoyer remained unemployed from his October 5, 2015 termination until he secured another job on April 20, 2016.[56] From April 2016 to July 2018, Mr. Zettlemoyer held six different jobs earning a total of $29,116.33.[57] From September 2016 to July 2017; May 2018 to July 8, 2018; and July 27, 2018 to the time of trial, Mr. Zettlemoyer remained unemployed.

## The Secretary sued Fairmount Foundry for retaliation on behalf of Mr. Zettlemoyer.

Section 11(c) prohibits retaliation against employees who file safety complaints with OSHA. If an employee believes his employer discharged him in retaliation for reporting a violation of the Act, he may file a complaint with the Secretary alleging discrimination.[58]

The Department of Labor investigated Mr. Zettlemoyer's complaint and determined Fairmount Foundry terminated him in retaliation for complaining to OSHA, protected activity under the Act, and brought this action against Fairmount Foundry under Section 11(c)(2).[59]

### II. Analysis

Both the Secretary and Fairmount Foundry move for post-trial relief. Fairmount Foundry moves under Rule 59 for an order (1) vacating the jury's award of punitive damages; (2) vacating the jury's liability verdict; (3) denying Mr. Zettlemoyer the injunctive and equitable relief the Secretary seeks post trial; and (4) alternatively, a new trial arguing we erred by not instructing the jury on at-will employment.[60]

8

The Secretary moves for an award of back pay greater than the jury's award, contending Mr. Zettlemoyer is entitled to at least $98,340 in back pay plus lost benefits of $10,250 for a total award of $108,590; an award of prejudgment interest on back pay; a tax "gross up" on back pay; reinstatement to his former position at Fairmount Foundry or, alternatively, front pay; and asks we permanently enjoin Fairmount Foundry from retaliating under Section 11(c), order Fairmount Foundry expunge Mr. Zettlemoyer's personnel file, provide a neutral or positive employment reference on request, and post a notice at the work site for sixty days.[61]

We first address Fairmount Foundry's motion and, finding evidence sufficient to support the jury's verdict, deny its motion in its entirety. We additionally find no error in our jury instructions and deny Fairmount Foundry's motion for a new trial. Turning next to the Secretary's motion, we grant it in part and deny it in part.

### A. We deny Fairmount Foundry's Rule 59 motion.

Under Federal Rule of Civil Procedure 59(a), we "may, on motion, grant a new trial on all or some of the issues—and to any party— … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[62] Rule 59(a) does not specify grounds on which we may grant a new trial. Our Court of Appeals directs we "ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand."[63] And the decision to "grant or deny a new trial is confided almost entirely to the discretion of the district court."[64] Our "power to grant a new trial is limited 'to ensure that [we] [do] not substitute [our] judgment of the facts and the credibility of the witnesses for that of the jury.'"[65]

Before addressing the merits of Fairmount Foundry's motion, we address its inaccurate recall of the jury serving solely in an "advisory" capacity or rendered an "advisory opinion."[66] The

9

jury did not serve as an "advisory jury" or return an "advisory opinion" on Fairmount Foundry's liability in this case. Fairmount Foundry demanded a jury trial in this action. We held a status call with counsel on February 8, 2019 after denying Fairmount Foundry's motion for summary judgment.[67] In our order scheduling the call, we advised counsel we would address amending our scheduling order absent a jury demand from either party.[68] The next day, Fairmount Foundry filed a demand for jury trial, "consistent with the endorsement on [the parties'] Rule 26(f) [report] submitted to the Court on April 10, 2018 on behalf of all parties notifying the Court in writing that the parties jointly agreed that a jury trial is demanded in this matter and the discussions held during the Rule 16 Conference in which the parties' demand for a jury trial was again shared with the Court. Notwithstanding the foregoing, this separate demand for a jury trial is being submitted for filing in accordance with Paragraph 2 of the Court's Order of February 6, 2019 which appears to request that a separate demand for a jury trial be filed with the Clerk."[69]

Under Federal Rule of Civil Procedure 39(a), "[w]hen a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless: (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."[70] Under Rule 39(c) "[i]n an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury; or (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial."[71]

Fairmount Foundry demanded a jury. The only issue addressed by the jury in an advisory capacity is the back pay verdict discussed with counsel at the charging conference.[72] Neither party

10

objected to an advisory verdict on back pay. Fairmount Foundry is incorrect the jury's verdict on its factual finding Mr. Zettlemoyer complained about a safety condition to OSHA or its factual finding on Fairmount Foundry's liability for retaliation is somehow an "advisory" verdict altering the standard under Rule 50(b) or Rule 59.

### 1. Evidence adduced at trial supports a punitive damages award.

Fairmount Foundry argues there is no evidence to support the jury's punitive damages award, contending there is no "affirmative evidence that anyone at Fairmount knew" Mr. Zettlemoyer's call to OSHA is protected activity on which the jury could base its punitive damages award.[73] Absent evidence Fairmount Foundry's supervisors knew Section 11(c) of the Act protected Mr. Zettlemoyer from retaliatory discharge, a requirement to show malice or reckless indifference, the jury could not have awarded punitive damages.

To support its argument, Fairmount Foundry cites *Kolstad v. American Dental Association*.[74] In *Kolstad*, the Supreme Court considered the circumstances under which punitive damages may be awarded under Title VII. It held "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."[75] The Court found there "will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard" where, for example, an "employer may simply be unaware of the relevant federal prohibition"; where "the employer discriminates with the distinct belief that its discrimination is lawful"; where "[t]he underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonable believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability."[76] The focus of "malice" and "reckless indifference" to support a punitive damages

11

award is on the "actor's state of mind;" "the mere existence of a civil rights violation is not a guarantee of eligibility for punitive damages."[77]

The Secretary responds Fairmount Foundry must provide evidence of its claimed ignorance of the law, it failed to do so at trial and, even if Fairmount Foundry did not know Section 11(c) prohibits retaliatory discharge, we must still uphold the jury's award if evidence supports a reasonable finding Fairmount Foundry acted "in the face of a perceived risk that its actions violate federal law."[78] The Secretary points to evidence Fairmount Foundry's management understood retaliation for complaining to OSHA is unlawful, but they terminated Mr. Zettlemoyer anyway.

The Secretary bears the burden of proof on punitive damages.[79] Recklessness and malice may be inferred from the facts.[80] In *Alexander*, our Court of Appeals found reckless indifference and malice could be inferred from a manager's repeated refusal to deal with inquiries from African American plaintiffs regarding an apartment rental and the manager's misrepresentations regarding an apartment's availability to award punitive damages in a Fair Housing Act discrimination case.[81] Recognizing *Kolstad's* exceptions to an award of punitive damages where a defendant might not be aware of federal law or honestly believed discrimination is permissible, the Court of Appeals in *Alexander* found no such exceptions applied in that case.[82] The court found "there is not any suggestion that [defendant] did not know that it was illegal, and had been for thirty years, to discriminate on the basis of race in housing. The jury concluded that [defendant] refused to deal with African-Americans with respect to the apartment building and was motivated by race. The plaintiffs have adduced sufficient evidence to demonstrate 'reckless or callous indifference' to federally protected rights and to permit the jury to award punitive damages."[83]

Fairmount Foundry argues OSHA investigator Mr. Smay, the only OSHA representative to speak with any Fairmount Foundry employee, did not testify at trial; no Fairmount Foundry

12

witness admitted "there was institutional knowledge that it was illegal to fire Zettlemoyer for calling OSHA," and there is no testimony OSHA told anyone at Fairmount Mr. Zettlemoyer's call is protected activity.[84]

The Secretary responds Mr. Block testified retaliation is both morally wrong and illegal; denied he terminated Mr. Zettlemoyer in retaliation for his OSHA complaint; and when asked whether Fairmount Foundry could have legally terminated Mr. Zettlemoyer for filing an OSHA complaint he responded "No. Absolutely not. That is ridiculous."[85] The Secretary additionally points to Mr. Block's testimony he discussed with Mr. Vaughn the decision to terminate Mr. Zettlemoyer.[86]

There is additional evidence Mr. Vaughn knew of protected activity under the Act. Mr. Zettlemoyer testified Mr. Vaughn approached him on October 6 stating "I heard you were the one that called OSHA" and Mr. Vaughn "seemed upset."[87] Mr. Zettlemoyer testified Mr. Vaughn, during this incident, said "a friend of his ... got OSHA called on him, they had a big fine, and that can't – he doesn't want that to happen to his business."[88] Mr. Vaughn denied having such a conversation with Mr. Zettlemoyer.[89] It is for the jury to make credibility determinations.

At trial, Mr. Vaughn testified Mr. Smay told him OSHA received a complaint about a leak onto an electrical box in the small loop area of the foundry;[90] Mr. Block told him Mr. Zettlemoyer was one of the employees who complained about the leak;[91] and he know Mr. Black and Mr. Smith together discussed the employees who may have called OSHA.[92] Mr. Vaughn testified he knew, after OSHA started its investigation and before Mr. Zettlemoyer's termination, of other employers who received OSHA fines.[93] Mr. Vaughn testified he had a closing conference with Mr. Smay and Mr. Smay told him he would return to conduct another closing conference with the union.[94] Again, the jury listened to testimony and made credibility determinations.

13

In the email exchange between Mr. Zettlemoyer and Mr. Kilp on October 6, 2016—two days before termination—Mr. Zettlemoyer expressed concern regarding the privacy of his complaint.[95] Mr. Kilp responded OSHA does not discuss the identity of the complainant with the employer in any circumstance and OSHA "also make[s] it clear to the employer *during the opening conference* that they cannot discriminate against employees."[96] Mr. Vaughn testified Mr. Smay came to the foundry on October 2, 2015 to inspect the complained-of leak onto an electrical box and admitted "we had a closing conference with [Mr. Smay] on the 2nd. And as he was walking to his car, out the door, … he said—he asked if we had a union at the plant. And I said yes. And he said, well, he'll have to come back and redo the closing conference. He was going to come back the following week."[97]

All this evidence—and particularly Mr. Kilp's email to Mr. Zettlemoyer on October 6, 2015, noting OSHA "makes it clear to the employer *during the opening conference*" (a conference Mr. Vaughn admittedly had with Mr. Smay on October 2 six days *before* Mr. Zettlemoyer's termination) the employer cannot discriminate against an employee for making a complaint—supports a finding, and at the very least an inference, the decisionmakers at Fairmount Foundry knew it could not retaliate against employees for making an OSHA complaint. This is a far cry from Fairmount Foundry's assertion there is "no evidence" to show any of its managers knew an employee's complaint to OSHA constituted protected activity.

Given this evidence adduced at trial, we find none of the exceptions recognized in *Kolstad* apply. We cannot find Fairmount Foundry "simply unaware" of the Act's prohibition on retaliation, or its belief "its discrimination is lawful," or a "novel or otherwise poorly recognized" discrimination theory, or any evidence of a reasonable belief "discrimination satisfies a bona fide

14

occupational qualification defense or other statutory exception to liability." We deny Fairmount Foundry's motion under Rule 59 as to punitive damages.

## 2. Evidence at trial supports a finding of pretext.

Fairmount Foundry additionally argues we must award "JNOV" on the jury's finding of liability under Rule 50(b) although its motion is styled as one under Rule 59.[98] A motion for judgment as a matter of law under Rule 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."[99] We may grant the motion only if "the record is critically deficient of the minimum quantum of evidence to sustain the verdict."[100]

While judgment as a matter of law should be granted sparingly, a "scintilla of evidence" is insufficient to sustain a jury's verdict.[101] "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict."[102] In considering a motion under Rule 50(b), we do not "weig[h] the evidence, determin[e] the credibility of witnesses, or substitut[e] our own version of the facts for that of the jury."[103]

Fairmount Foundry argues there is no showing of retaliatory animus and we must vacate the jury's "baseless and erroneous verdict."[104] Fairmount Foundry challenges the jury's finding of pretext, contending it provided a legitimate, non-discriminatory reason for Mr. Zettlemoyer's termination and the Secretary did not produce any evidence of pretext beyond a prima facie case for retaliation. Fairmount Foundry points to testimony (without citation to the transcript), no one at the foundry "ever treated [Mr.] Zettlemoyer with anything less than general respect as a person and as a worker" and "[e]ach member of management expressed some level of regret that his

15

circumstances in October, 2015 warranted termination."[105] Fairmount concludes there is no evidence on which a reasonable jury could find the decision to terminate Mr. Zettlemoyer is motivated by anything other than his habitual and chronic attendance issues.

The Secretary disagrees, citing a litany of evidence supporting a finding of pretext, including the timeline between Mr. Zettlemoyer's OSHA complaint and his termination. The evidence adduced at trial included:

- Fairmount Foundry's history of firing, and **then rehiring**, Mr. Zettlemoyer for attendance points violations;

- Fairmount Foundry's management testifying to Mr. Zettlemoyer's value as an employee;

- As of September 25, 2015, Mr. Zettlemoyer accrued over twenty-two points in unexcused absences, but Fairmount Foundry did not terminate him then;

- On September 30, 2015, Mr. Zettlemoyer made a safety complaint to OSHA regarding the leak in the roof over his work area;

- Two days later, on October 2, 2015, OSHA Officer Mr. Smay inspected the foundry, telling Mr. Vaughn OSHA received an anonymous complaint about a roof leak in the small loop area of the foundry;

- Mr. Block testified Mr. Zettlemoyer told him about the roof leak before the October 2, 2015 inspection, and after Mr. Smay's inspection, Mr. Block spoke with Mr. Vaughn about who might have made the OSHA complaint;

- Mr. Block narrowed the list of possible employees making such a complaint to five, but he knew only Mr. Zettlemoyer told him about the roof leak;

- Mr. Zettlemoyer testified when he returned to work after October 2, 2015, Mr. Smith's and Mr. Block's behavior changed towards him;

- Mr. Zettlemoyer testified to an interchange with Mr. Vaughn on October 6, 2015, in which Mr. Vaughn accused Mr. Zettlemoyer of making the complaint to OSHA;

- On October 8, 2015, Fairmount Foundry terminated Mr. Zettlemoyer for accumulating over twenty points for absence during his probationary period despite

the fact Mr. Zettlemoyer had accumulated over twenty points two weeks earlier; and

- On the form documenting Mr. Zettlemoyer's termination, Fairmount Foundry indicated it would not rehire Mr. Zettlemoyer despite its history of firing him for points violations and immediately rehiring him.

Fairmount Foundry's witnesses denied most of Mr. Zettlemoyer's testimony. After four days of evidence, the jury made credibility determinations and found Fairmount Foundry's reason for terminating Mr. Zettlemoyer—the accumulation of attendance points violations—a pretext for retaliatory discharge. There is ample evidence from which the jury could reasonably disbelieve Fairmount Foundry's articulated legitimate reason or believe retaliatory animus was more likely than not a motivating or determinative cause of Fairmount Foundry's conduct. Fairmount Foundry is unhappy with the jury's credibility findings; this is not a basis for a Rule 50(b) motion.

Judgment as a matter of law under Rule 50(b) is granted only, viewing the evidence in the light most favorable to the Secretary and giving him the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability. We may grant such a motion only if "the record is critically deficient of the minimum quantum of evidence to sustain the verdict."[106] The record is not so "critically deficient" here and we deny Fairmount Foundry's Rule 50(b) motion.

### 3. We did not err in refusing to instruct the jury on at-will employment.

Fairmount Foundry moves, in the alternative, for a new trial arguing we erred by refusing to instruct the jury on at-will employment. When a motion for new trial involves a matter within the sound discretion of the trial court, here jury instructions, we have wide latitude in ruling on the motion.[107] Requests for a new trial are disfavored.[108] A trial court will not grant a new trial on the

17

basis of trial error unless the error results in prejudice.[109] "In other words, no injustice will be found in nonprejudicial trial errors."[110]

At our charging conference, Fairmount Foundry objected to our earlier decision to decline an at-will employment instruction.[111] We explained we did not find an at-will instruction material.[112]

Fairmount Foundry argues as the date of his termination on October 8, 2015, Mr. Zettlemoyer occupied the status of a probationary employee and not yet eligible for membership in the union. Accordingly, it argues, Pennsylvania's at-will employment doctrine applies and, as an at-will employee, Fairmount Foundry appropriately terminated Mr. Zettlemoyer because he violated the twenty-point rule governing non-union employees.[113] Without union membership, Mr. Zettlemoyer did not have the protection of the forty-five-point attendance threshold for termination.

Fairmount Foundry points to Mr. Zettlemoyer's deposition testimony he believed he had a forty-five-point absentee/lateness threshold before he could be terminated, even as a probationary employee.[114] It argues Mr. Zettlemoyer's testimony and the disciplinary differences between a probationary employee and union member "could have easily led some members of the jury to contend that Zettlemoyer did not, in fact, violate the points rule that actually governed his attendance" and, "[h]aving determined [Mr.] Zettlemoyer had not violated the points rule that actually governed his attendance, the same jury members could have concluded that Zettlemoyer could not be terminated."[115] Fairmount Foundry argues an at-will employment instruction "would have supplied the needed clarification."[116]

The Secretary responds there is no confusion regarding Mr. Zettlemoyer's status. Although Mr. Zettlemoyer believed he had a forty-five-point threshold reserved for union members before

18

being terminated, he admitted to his probationary employee status.[117] The Secretary additionally argues the jury instructions properly instructed the jury Fairmount Foundry had the right to terminate Mr. Zettlemoyer for violating its attendance policy, but it would be unlawful to do so in retaliation for filing an OSHA complaint.

The issue in this case is whether Fairmount Foundry terminated Mr. Zettlemoyer because of his complaint to OSHA or whether his complaint was a substantial reason for his termination, the first question on the verdict form.[118] Following the Third Circuit Model Instructions, we instructed the jury on a retaliation claim.[119] We instructed the jury on pretext, explaining, *inter alia*:

> Actions taken by Fairmount Foundry which adversely affect Mr. Zettlemoyer may be predicated on non-discriminatory grounds. The Act's prohibition on retaliation applies when the adverse action occurs because the employee has engaged in protected activity. An employee's engagement in activities protected by the Act does not automatically render him immune from discharge or discipline for legitimate reasons or from adverse action dictated by non-prohibited considerations.

> At the same time, to establish a violation of the Act, Mr. Zettlemoyer's engagement in protected activity need not be the sole consideration behind a discharge or other adverse action. If the protected activity was a substantial reason for the action or if the discharge would not have taken place but for his engagement in protected activity, the Act has been violated. Ultimately, the issue is whether a discharge was because of protected activity will have to be determined on the basis of the facts in the case.

> Fairmount Foundry has given a non-retaliatory reason for terminating Mr. Zettlemoyer. If you disbelieve Fairmount Foundry's explanation for its conduct, then you may but not need find the Secretary has proved retaliation. In determining whether Fairmount Foundry's stated reasons for its actions were a pretext or excuse for retaliation, you may not question Fairmount Foundry's business judgment. You cannot find retaliation simply because you disagree with the business judgment of Fairmount Foundry or believe it is harsh or unreasonable. You are not to consider Fairmount Foundry's wisdom. However, you may consider whether Fairmount Foundry's reason is merely a cover-up for retaliation.[120]

The issue never hinged on Mr. Zettlemoyer's status as a probationary employee or a member of the Union. Fairmount Foundry could not have terminated him under either status

because of a complaint to OSHA. Even if we gave an at-will employment instruction explaining Mr. Zettlemoyer could be terminated for any reason or for no reason at all, Fairmount Foundry could not have terminated him for engaging in protected activity. Fairmount Foundry does not explain how an instruction on at-will employment prejudiced it and, given our charge on the elements of a retaliation claim and pretext, we see no prejudice. Jury instructions are considered "as a whole to determine whether they fairly and adequately contain the law applicable to the case."[121] Our instructions did so and we deny Fairmount Foundry's motion for a new trial on this basis.

### B. We grant in part and deny in part the Secretary's motion.

Where the Secretary brings an action against an employer for a violation of Section 11(c)(1), we have "jurisdiction, for cause shown to restrain violations of [Section 11(c)(1)] and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay."[122]

### 1. We deny the Secretary's motion for increased back pay and lost benefits.

We submitted the question of back pay to the jury for an advisory verdict under Federal Rule of Civil Procedure 39(c).[123] Rule 52(a)(1) requires "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."[124] We deny the Secretary's motion for back wages and lost benefits in the accompanying Findings of Fact and Conclusions of Law.

### 2. We award prejudgment interest on the backpay award.

The Secretary asks we award prejudgment interest on the back pay award computed under the IRS overpayment rate defined in 26 U.S.C. § 6621. The Secretary argues we should award prejudgment interest because the jury found Fairmount Foundry intentionally retaliated against

Mr. Zettlemoyer and such an award will make Mr. Zettlemoyer whole. Fairmount Foundry responds there is no basis to award prejudgment interest because the purpose of such an award is to make Mr. Zettlemoyer whole and there is no evidence he suffered financial harm as a result of his termination, for example, an unpaid debt or unmet financial obligation.[125]

In employment cases, we may award prejudgment interest in our discretion if it "helps to make victims of discrimination whole," serving to "compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had he not been unjustly discharged." [126] There is a "strong presumption in favor of awarding prejudgment interest, except where the award would result in 'unusual inequities.'"[127] The prejudgment interest rate applied to an award of back pay is within our discretion.[128]

Given the strong presumption in favor of awarding prejudgment interest, it is an abuse of our discretion to "deviat[e] from this policy without a reasoned explanation."[129] We see no reason to deviate here. Fairmount Foundry provides us with no authority there must be evidence of financial harm such as unpaid debt or unmet financial obligation to award prejudgment interest.[130] To the contrary, prejudgment interest is presumed to make whole Mr. Zettlemoyer, who the jury found suffered a retaliatory discharge. To the extent evidence of "financial harm" is required, as suggested by Fairmount, Mr. Zettlemoyer testified as a result of his termination he could not financially care for his children, his girlfriend "had to pick up more hours," and the family needed to move back to his mother's home.[131]

We award prejudgment interest computed at the IRS overpayment rate in 26 U.S.C. § 6621 on the $25,000 back pay award. The Secretary does not provide us with this calculation. Under Section 6621(a)(1), the overpayment rate "shall be the sum of – (A) the Federal short-term rate …,

21

plus (B) 3 percentage points (2 percentage points in the case of a corporation)." Our accompanying

Order requires the Secretary promptly provide us with this calculation.

### 3. We deny a tax "gross up" on the back pay award.

The Secretary next argues we should award a tax "gross up" on the back pay award to

offset the tax liability to Mr. Zettlemoyer of a lump back pay award taxable as ordinary income.

In this Circuit, "an award to compensate a prevailing employee for [his] increased tax burden as a

result of a lump sum award will, in the appropriate case, help to make a victim whole."[132] Unlike

prejudgment interest, a prevailing plaintiff is not presumptively entitled to "an additional award to

offset tax consequences above the amount to which [he] would otherwise be entitled."[133] Our

Court of Appeals cautioned "[e]mployees will continue to bear the burden to show the extent of

the injury they have suffered."[134]

The Secretary seeks a back pay award from October 2015 to March 2019, wages Mr.

Zettlemoyer would have earned in 2015, 2016, 2017, 2018, and 2019. The Secretary argues a

lump sum award paid entirely in one tax year will push Mr. Zettlemoyer into a higher tax bracket

requiring a "gross up" to offset the tax consequence. The Secretary "suggests" increasing any

award above \$38,700 by 12.8% to account for the tax burden on Mr. Zettlemoyer.[135]

The Secretary concedes, however, "[no] adjustment is needed for the first \$38,700.00 in

back wages and prejudgment interest awarded, because that amount will be taxed in the first or

second tax bracket, which is how the vast majority of Mr. Zettlemoyer's earnings were taxed while

he worked at Fairmount Foundry."[136] As previously discussed, we find a back pay award of

\$25,000 appropriate plus an award of prejudgment interest. We have no basis to find this recovery

will exceed the \$38,700 threshold advanced by the Secretary making a tax gross-up award

22

unnecessary. Accordingly, we deny the Secretary's motion seeking a tax gross-up subject to revisiting this analysis should the prejudgment interest exceed $13,700.00.

## 4. We order reinstatement of Mr. Zettlemoyer to his job at Fairmount Foundry.

The Secretary seeks reinstatement of Mr. Zettlemoyer to his job at Fairmount Foundry or, alternatively, an award of front pay. The Secretary does not advocate one remedy over the other. "Should [we] conclude" reinstatement is the appropriate remedy, the Secretary asks for an order of reinstatement at Fairmount Foundry with the "same union membership, seniority, sick pay, vacation pay, and other benefits he would have received if he had remained continuously employed at Fairmount Foundry since October 2015" as well as the removal of attendance points and restoration of union seniority as of July 23, 2015 when his last period of employment began.[137] Alternatively, the Secretary seeks a front pay award of at least $275,662.40, a calculation based on an award of 360 weeks of front pay at a $708.09 weekly rate used to calculate back pay plus $250 per month credit in lieu of health insurance benefits.

Fairmount Foundry responds we should not award front pay to Mr. Zettlemoyer because he failed to mitigate his damages, again arguing he "fully mitigated" his damages as of July 25, 2016 when he obtained a job at Veritas Medical Solutions. Fairmount Foundry cites Mr. Zettlemoyer's work history after Veritas: he worked at Veritas only a month when he quit and stayed out of the job market for approximately one year; re-entering the job market in July 2017, he found a job but quit after ten months working there; he found another job in July 2018 at a rate of $22.50 per hour but his employer fired him after two weeks; and he has been out of work since July 2018. Fairmount Foundry argues Mr. Zettlemoyer worked only sixteen months during the forty-three months since his termination in October 2015; his post-termination conduct shows he

is not entitled to relief in equity; and Mr. Zettlemoyer is able to find a job and could be employed, but he simply has no interest in doing so.

Reinstatement, and its alternative remedy front pay, are a part of the "make whole" relief available to a prevailing plaintiff in an employment discrimination case.[138] Reinstatement "advances the policy goals of make-whole relief and deterrence in a way which money damages cannot."[139] "[W]hile the availability of money damages may have significance in the district court's consideration of remedies, reinstatement is the preferred remedy in the absence of special circumstances militating against it."[140] "[A] denial of reinstatement is unwarranted unless grounded in a rationale which is harmonious with the legislative goals of providing plaintiffs make-whole relief and deterring employers from unconstitutional conduct."[141] Front pay is an alternative to the remedy of reinstatement "which would be inappropriate where there is a likelihood of continuing disharmony between the parties or unavailable because no comparable position exists."[142]

After carefully considering the record evidence, we order Fairmount Foundry reinstate Mr. Zettlemoyer. The jury found Fairmount Foundry liable for retaliation, finding it terminated Mr. Zettlemoyer in October 2015 "because of his complaint to OSHA or … his complaint to OSHA [was] a substantial reason for his termination."[143] Although Mr. Vaughn testified he would not rehire Mr. Zettlemoyer,[144] he also agreed Mr. Zettlemoyer is a productive, valuable employee, and a hard worker and it is "difficult to find good help. And we had invested time and money in training the man."[145]

Mr. Zettlemoyer testified he had a "really good" relationship with Mr. Smith and Mr. Vaughn.[146] Mr. Zettlemoyer also testified he "loved" his job.[147] On cross-examination, Mr. Zettlemoyer testified he tried to provide Fairmount Foundry with a doctor's note after his

termination in an effort to explain an unexcused absence because he wanted his job back at the foundry.[148]

Mr. Block testified he had a "very good working relationship" with Mr. Zettlemoyer.[149] Mr. Block testified he felt an obligation to give Mr. Zettlemoyer "fatherly advice" and it "pained" him to terminate Mr. Zettlemoyer.[150] Mr. Block testified to the reasons Fairmount Foundry consistently rehired Mr. Zettlemoyer, explaining "we liked Zach. We really did. ... He worked very well for us. He did his job. He did a very good job for the whole foundry. He was like the go-to guy. He had very good in-depth knowledge of the patterns and molds that we make and very helpful in putting those things together to get them into the production line. He was usually always very mild mannered. He kept things flowing on the production side. His position was what he knew. He brought a great deal of advantageous production work to the floor, and you know, when he was gone, we missed him. And you don't' realize sometimes how much you miss a guy until he's gone. And he – we brought him back because he came back to us and asked us if we would consider rehiring him. So after some thought and ... looking at his history, once again we gave him another opportunity to prove himself."[151]

By all accounts, Fairmount Foundry valued Mr. Zettlemoyer's work and Mr. Zettlemoyer enjoyed working there. We recognize Mr. Zettlemoyer's history of attendance issues and those may be the subject of future employment concerns should he continue missing work. We expect Fairmount Foundry will not retaliate in any way against Mr. Zettlemoyer for exercising his rights to seek relief under federal law, including succeeding at trial. As in every case, the past relationship may affect their ability to now work together. But we heard several witnesses compliment Mr. Zettlemoyer. While there may be some tension arising from the Secretary's lawsuit, we do not find "extraordinary tension or strife within the workplace causing reinstatement

25

to be unfeasible,"[152] particularly where Fairmount Foundry did not respond to the Secretary's motion for reinstatement.

We order Mr. Zettlemoyer reinstated to his position at Fairmount Foundry as of the time of his termination on October 8, 2015. We decline to reinstate with the status advocated by the Secretary: "same union membership, seniority, sick pay, vacation pay, and other benefits that he would have received if he had remained continuously employed by Fairmount Foundry since October 2015," a zero attendance points balance, and union seniority beginning July 23, 2015. To make Mr. Zettlemoyer whole, we reinstate him to the position and employment status as of his termination. Restoring him under the terms advocated by the Secretary would do more than make Mr. Zettlemoyer whole. Having ordered reinstatement, we need not address front pay.

### 5. We permanently enjoin Fairmount Foundry from retaliating against whistleblowers under Section 11(c), order Fairmount Foundry to post an anti-retaliation notice for 60 days, expunge Mr. Zettlemoyer's personnel file, and provide a neutral reference upon request.

The Secretary seeks to permanently enjoin Fairmount Foundry under Section 11(c) from retaliating against other OSHA whistleblowers in the future and seeks other "appropriate relief" under Section 11(c) including an order directing Fairmount Foundry to expunge Mr. Zettlemoyer's personnel record of any adverse references to his discharge; post a copy of the Court's Order for sixty days; and provide a neutral or positive employment reference upon request.[153]

Fairmount Foundry responds the Secretary states no basis, and there is no basis in the record, to find equitable relief appropriate.[154] Fairmount Foundry argues there is "no indication" it knew Mr. Zettlemoyer engaged in protected activity when he made his OSHA complaint. It further argues because it is now aware of Rule 11(c) "[i]n light of this extensively litigated case, there is no need for any further notice to Fairmount of the rights afforded to workers under

26

OSHA."[155] This speculation misses the point, as we understand the Secretary's request for posted notice is to advise other foundry workers of their right to a safe workplace.

Under Section 11(c)(2), we have jurisdiction to "restrain violations" of the anti-retaliation provision and "order all appropriate relief."[156] When it enacted the Act, "Congress declare[d] it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources –" including "(2) by providing that employers and employees have separate but dependent responsibilities and rights with respect to achieving safe and healthful working conditions."[157]

"Section 11(c) exists to protect whistleblowers and support the purpose of the Act, namely creating a safe and healthy working environment."[158] To advance this purpose, we may grant "broad permanent injunctions against employers" who violate Section 11(c) and where, as here, the Secretary "seek[s] to vindicate a public right (established by Congress) for employees to be free from retaliation for seeking safe workplaces," intended by Congress to be broadly construed.[159]

Although there is a dearth of cases, we find support for the imposition of equitable remedies requested by the Secretary. For example, in *Marshall*, our sister district court found the employer violated Section 11(c) of OSHA after terminating employees who complained about safety and health problems in the workplace.[160] The court ordered reinstatement, permanently enjoined the employer from violating the provisions of Section 11(c), expunged the employees' personnel records of any adverse references resulting from their discharge, and required the employer to post

27

the court's order in a conspicuous area of the workplace for sixty days, finding these remedies appropriate and authorized by the Act.[161]

In *Clearwater Paper*, the court found an employer terminated its employee for filing an OSHA complaint in violation of Section 11(c).[162] The court found the Secretary entitled to a permanent injunction preventing the company from violating Section 11(c). The court declined to award additional equitable relief, including posting of anti-discrimination notices in all nationwide facilities, distribution to all employees nationwide a statement of whistleblower rights, and to compel all managers and supervisors attend training on whistleblower rights.[163] The court declined to award such equitable remedies because the evidence did not show a "corporate-wide animus towards employees who filed OSHA complaints."[164] We find this case factual distinguishable as the employer there is a corporation with nationwide facilities and the company sold the facility where the retaliation occurred.

In *Perez v. U.S. Postal Service*, the court found the Postal Service retaliated against an employee for filing a complaint with OSHA.[165] The court permanently enjoined the Postal Service from violating Section 11(c) limited in scope to the facilities where the Secretary adduced evidence of retaliatory treatment.[166]

Our diligent jury found Fairmount Foundry terminated Mr. Zettlemoyer either because of his safety complaint to OSHA, or because his complaint was a substantial reason for his termination. The Secretary is charged with enforcing Mr. Zettlemoyer's right to be free from retaliation after making a safety complaint. To advance the purposes of the Act, we permanently enjoin Fairmount Foundry from violating Section 11(c) and order Fairmount Foundry; expunge from Mr. Zettlemoyer's personnel record any adverse reference to discharge on October 8, 2015; post a court-approved anti-retaliation notice in a common area for a period of sixty days; and,

provide a neutral reference regarding Mr. Zettlemoyer's employment with it to date if requested by subsequent employers.

## III. Conclusion

We deny Fairmount Foundry's motion for post-trial relief in its entirety. We grant in part and deny in part the Secretary's motion; we deny the Secretary's request for an increased back pay award including "lost benefits" and a tax gross-up on the back pay award and will grant the Secretary's request for reinstatement and other equitable relief.

---

[1] 29 U.S.C. § 660(c).

[2] *Id.* at § 660(c)(1). If, after investigation, the Secretary "determines that the provisions of [Section 11] have been violated, he shall bring an action in any appropriate United States district court against such person." *Id.* at § 660(c)(2).

[3] ECF Doc. No. 95.

[4] Notes of Testimony ("N.T.") 3/25/2019 at 46 (ECF Doc. No. 106).

[5] *Id.* at 47.

[6] *Id.*

[7] Joint Trial Exhibit 2.

[8] *Id.* at 1043a.

[9] *Id.* at 1043a; Joint Trial Exhibit 3 at Art. XI, §2 ("The Employer shall have the unquestioned right to dismiss any employee within sixty (60) working days after the commencement of his employment (so called probationary period). …).

[10] Joint Trial Exhibit 2 at 1043a.

[11] N.T. 3/25/2019 at 47; Joint Trial Exhibit 10.

[12] N.T. 3/25/2019 at 47.

[13] *Id.*

[14] *Id.*

29

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 48.

[19] *Id.*

[20] *Id.* at 78.

[21] *Id.*; Joint Trial Exhibit 24.

[22] N.T. 3/25/2019 at 48.

[23] *Id.*

[24] N.T. 3/26/2019 at 87-88, 93-94 (ECF Doc. No. 107).

[25] N.T. 3/27/2019 at 5-6 (ECF Doc. No. 108).

[26] N.T. 3/27/2019 at 6-7.

[27] *Id.* at 7-8.

[28] *Id.* at 101-02.

[29] N.T. 3/25/2019 at 80.

[30] *Id.* at 80-81.

[31] *Id.* at 82-83.

[32] *Id.* at 82.

[33] *Id.* at 82-83.

[34] N.T. 3/26/2019 at 211.

[35] *Id.* at 94.

[36] Joint Trial Exhibit 27; N.T. 3/25/2019 at 85.

[37] Joint Trial Exhibit 27.

[38] *Id.*

[39] *Id.*

[40] *Id.* (emphasis added).

[41] *Id.*

[42] N.T. 3/25/2019 at 86-87.

[43] *Id.* at 48-49.

[44] Joint Trial Exhibit 31.

[45] Joint Trial Exhibit 2.

[46] Joint Trial Exhibit 31.

[47] Joint Trial Exhibit 22.

[48] *Id.*

[49] N.T. 3/25/2019 at 94.

[50] Joint Trial Exhibit 11.

[51] N.T. 3/25/2019 at 96-100.

[52] N.T. 3/26/2019 at 97.

[53] *Id.* at 98.

[54] N.T. 3/25/2019 at 101.

[55] *Id.* at 103.

[56] *Id.* at 104.

[57] Joint Trial Exhibit 53.

[58] 29 U.S.C. § 660(c)(2).

[59] ECF Doc. No. 1.

[60] ECF Doc. No. 110. The Secretary responded at ECF Doc. No. 113.

[61] ECF Doc. No. 100. Fairmount Foundry responded at ECF Doc. No. 111. The Secretary replied at ECF Doc. No. 112.

[62] Fed.R.Civ.P. 59(a)(1)(A).

[63] *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993) (citing *EEOC v. De. Dep't of Health and Social Servs.*, 865 F.2d 1408, 1413 (3d Cir. 1989)).

[64] *Taylor v. Shields*, 744 F. App'x 83, 85 (3d Cir. 2018) (quoting *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992)).

[65] *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Delli Santi v. CNA Ins. Co.*, 88 F.3d 192, 201 (3d Cir. 1996)).

[66] ECF Doc. No. 110-1 at 2.

[67] ECF Doc. No. 50.

[68] *Id.*

[69] ECF Doc. No. 51.

[70] Fed.R.Civ.P. 39(a).

[71] Fed.R.Civ.P. 39(c).

[72] N.T. 3/27/2019 at 223.

[73] ECF Doc. No. 110-1 at 4. Fairmount Foundry does not contest punitive damages are available under the Act. It does not object to the punitive damages jury instruction taken from the Third Circuit Model Instruction for punitive damages in a Title VII case at § 5.4.2.

[74] 527 U.S. 526 (1999).

[75] *Id.* at 536.

[76] *Id.* at 536-37.

[77] *Alexander v. Riga*, 208 F.3d 419, 431-32 (3d Cir. 2000) (citing *Kolstad*, 527 U.S. at 536-37).

[78] ECF Doc. No. 113 at 2 (quoting *Alexander*, 208 F.3d at 432).

[79] *Kolstad*, 527 U.S. at 546.

[80] *Alexander*, 208 F.3d at 431.

[81] *Id.*

[82] *Id.* at 432.

[83] *Id.*

[84] ECF Doc. No. 110-1 at 4.

[85] N.T. 3/27/2019 at 100.

[86] *Id.* at 15.

[87] N.T. 3/25/2019 at 82.

[88] *Id.* at 83.

[89] N.T. 3/26/2019 at 95.

[90] *Id.* at 87-88.

[91] *Id.* at 89.

[92] *Id.* at 91.

[93] *Id.* at 92.

[94] *Id.* at 94.

[95] Joint Trial Exhibit 27.

[96] *Id.* (emphasis added).

[97] N.T. 3/26/2019 at 87-88, 93-94.

[98] ECF Doc. No. 110-1 at 7-9. At the close of the Secretary's case, Fairmount Foundry moved under Rule 50(a) for judgment as a matter of law arguing the Secretary did not carry its burden of showing pretext and there is no evidence supporting punitive damages. *See* N.T. 3/27/2019 at 225-229 (ECF Doc. No. 108) and Motion for directed verdict at ECF Doc. Nos. 87, 88.

[99] *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

[100] *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009).

[101] *Lightning Lube*, 4 F.3d at 1166.

[102] *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (citation omitted).

[103] *Id.* (quoting *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

[104] ECF Doc. No. 110-1 at 8-9.

[105] *Id.* at 8.

[106] *Acumed LLC.*, 561 F.3d at 211.

33

[107] *Dean v. Specialized Sec. Response*, 876 F. Supp. 2d 549, 552-53 (W.D. Pa. 2012).

[108] *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 792 (E.D. Pa. 2012).

[109] *Id.*

[110] *Dean*, 876 F. Supp. 2d at 552-53.

[111] N.T. 3/27/2019 at 254.

[112] *Id.*

[113] ECF Doc. No. 110-1 at 9-10.

[114] N.T. 3/25/2019 at 133.

[115] ECF Doc. No. 110-1 at 9-10.

[116] *Id.* at 10.

[117] N.T. 3/25/019 at 132.

[118] ECF Doc. No. 95.

[119] N.T. 3/28/2019 at 28-31 (ECF Doc. No. 109).

[120] *Id.* at 30-31.

[121] *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996).

[122] 29 U.S.C. § 660(c)(2).

[123] N.T. 3/27/2019 at 223.

[124] Fed.R.Civ.P. 52(a)(1).

[125] Fairmount Foundry does not contest the IRS overpayment rate if we granted the Secretary's motion for prejudgment interest.

[126] *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 868 (3d Cir. 1995) (applying prejudgment interest at the IRS overpayment rate in a Title VII case).

[127] *Id.* (citation omitted).

[128] *Taxman v. Bd. of Educ. of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996); *Johnson v. Dependability Co., LLC*, No. 15-3355, 2016 WL 852038, at * 3 (E.D. Pa. Mar. 3, 2016) (citing

*Diaz v. Saucon Valley Manor, Inc.*, No. 12-433, 2013 WL 4564300, at \*2 (E.D. Pa. Aug. 27, 2013)).

[129] *Marcus v. PQ Corp.*, 458 F.App'x 207, 214 (3d Cir. 2012) (in age discrimination case, remanding to district court to incorporate prejudgment interest).

[130] Fairmount Foundry cites our recent decision in *Middlebrooks v. Teva Pharm. USA, Inc.*. No. 17-412, 2019 WL 438092 (E.D. Pa. Feb. 4. 2019) awarding prejudgment interest at the IRS overpayment rate. ECF Doc. No. 111-1 at 19. Fairmount Foundry distinguishes the case because there we found testimony Mr. Middlebrooks remained out of work without pay and he and his wife used retirement savings to cover living expenses, and Fairmount Foundry argues there is no such testimony from Mr. Zettlemoyer here. In *Middlebrooks*, we discussed testimony of financial loss in the context of determining whether to apply the IRS overpayment rate of 26 U.S.C. § 6621 or a lower T-Bill rate as argued by Teva. *Middlebrooks*, 2019 WL 438092 at \*22. We cited Mr. Middlebrooks's testimony as a basis for awarding a higher rate of interest to restore him to his position if not for the retaliation as found by the jury. We examined the testimony in the context of the interest rate to apply, not whether we should award interest at all.

[131] N.T. 3/25/2019 at 115.

[132] *Eshelman*, 554 F.3d at 442.

[133] *Id.* at 443.

[134] *Id.*

[135] ECF Doc. No. 100 at 14.

[136] *Id.* at 13-14.

[137] ECF Doc. No. 100 at 16.

[138] *Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 86 (3d Cir. 2009).

[139] *Squires v. Bonser*, 54 F.3d 168, 172-73 (3d Cir. 1995) (reinstatement appropriate in an action under 42 U.S.C. § 1983).

[140] *Id.* at 173 (citing *Feldman v. Philadelphia Housing Auth.*, 43 F.3d 823, 831 (3d Cir.1994), and n. 8 (collecting cases)).

[141] *Id.* at 172.

[142] *Donlin*, 581 F.3d at 86 (citing *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir.1987) and *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 890 (3d Cir.1984)).

[143] ECF Doc. No. 95.

[144] N.T. 3/26/2019 at 113.

[145] *Id.* at 98.

[146] N.T. 3/25/2019 at 63.

[147] *Id.* at 116.

[148] *Id.* at 151.

[149] N.T. 3/27/2019 at 17.

[150] *Id.* at 18-20.

[151] *Id.* at 34-35.

[152] *Moore v. Susquehanna Area Reg'l Airport Auth.*, No. 02-535, 2005 WL 2430790, at * 14 (M.D. Pa. 2005) (adopting reasoning of *Squires v. Bonser*, 54 F.3d 168 (3d Cir. 1995)).

[153] ECF Doc. No. 100 at 1-2, 19-20.

[154] ECF Doc. No. 111-1 at 19-20.

[155] *Id.* at 20.

[156] 29 U.S.C. § 660(c)(2).

[157] 29 U.S.C. § 651(b).

[158] *Perez v. Clearwater Paper Corp.*, 184 F.Supp.3d 831, 844 (D.Idaho, 2016) (citing 29 U.S.C. § 651(b)).

[159] *Id.* (citing *Marshall v. Wallace*, No. 77-693, 1978 WL 18639, at * 5 (M.D. Pa. Dec. 22, 1978)).

[160] *Marshall*, 1978 WL 18639 at *1-*2.

[161] *Id.* at *4.

[162] *Clearwater Paper*, 184 F.Supp. 3d at 841.

[163] *Id.* at 844.

[164] *Id.*

[165] *Perez v. U.S. Postal Serv.*, 76 F.Supp. 3d 1168, 1184 (W.D. Wash. 2015).

---

[166] *Id.* at 1195-99.